IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| VIVIAN REDDING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:14-CV-407 (MTT) |
| ) | |
| ERIC FANNING, *Acting Secretary, U.S.* ) | |
| *Department of the Air Force,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Vivian Redding, who is African-American, alleges that Amanda Foster, a human resources supervisor at the Robins Air Force Base (the "Air Force"), discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").[1]  Doc. 1.  The Defendant moved for summary judgment.  Doc. 23.  The Defendant's motion is **GRANTED**.

I.    BACKGROUND

Redding's allegations arise from his dissatisfaction with Foster's handling of his exercise period.  After unsuccessfully pursuing several administrative remedies, culminating in the denial of his Equal Employment Opportunity Commission (EEOC) appeal, Redding filed this Title VII action.  Docs. 1; 9; 23-3; 23-4.  The Complaint makes the bare assertion of "constant pressure from the conditions of Unlawful Employment Practices in the form of Racial Discrimination from management, since the summer of 2013."  Doc. 1.  The *Plaintiff's More Definite Statement Pursuant ot* [sic] *Rule 12(E)*

---

[1] The Defendant addresses a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., "out of the abundance of caution."  Doc. 23-2 at 9 n.1.  The Court agrees with the Defendant that no such claim was stated.   However, any such claim would be analyzed under the *McDonnell Douglas* analysis applicable to Redding's indirect disparate treatment claim and would, accordingly, fail for the same reasons that Redding's Title VII claim fails.  *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

(Doc. 9), filed in response to the *Defendant's Motion For and Memorandum in Support of a More Definite Statement* (Doc. 8), alleges disparate treatment under Title VII because of his race and offers the following supporting factual allegations: That "in or around" July of 2013 and again in August of 2013, "Ms. Foster took my employment benefit [fitness timeslot] to give favor (sic) to a young White (Caucasian) male (Mr. Josh Collins)." Doc. 9 at 1-2. Redding alleges Foster failed to abide by a certain Local Supplement Agreement/Memorandum of Agreement governing Civilian Physical Fitness and Wellness Activities (Doc. 23-3 at 41-43) (the "Agreement") in scheduling Redding's weekly fitness leave. Doc. 9 at 1-2. In relevant part, the Agreement states: "Available Fitness Leave time will be evenly distributed across the different start times. Employees may volunteer for Fitness Leave times every shift rotation. Conflicts will be resolved using <u>Leave SCD</u> [service computation date]." Doc. 23-3 at 41-42. Because of Redding's earlier SCD, any conflict in fitness slot with Collins would be properly resolved in favor of Redding. *See id.* at 158-59.

The Defendant moved for summary judgment. The Defendant argues that this action, filed November 21, 2014, is untimely, because Redding's ninety-day window to file a civil action following his EEOC appeal ended "no later than October 22, 2014." Doc. 23-2. The Defendant also argues that Redding has not demonstrated any adverse employment action. *Id.* at 8. In support of his motion, the Defendant attaches the administrative record (Doc. 23-3);[2] the final decision of the EEOC (Doc. 23-4); and an affidavit by Foster asserting, among other things, that she adhered to the Agreement (Doc. 23-5).[3]

---

[2] Redding and the Defendant cite to the administrative record by the pagination of the original administrative record rather than by the actual page number of the PDF in the record. The PDF pagination differs from the pagination of the administrative record by three pages. For clarity, the Court has translated all these citations into the pagination of the PDF filed on the record in this action.

[3] The administrative record is certified, and the Defendant asserts the authenticity it, along with the EEOC's decision, in his statement of material facts (though outside of the numbered paragraphs). Doc. 23-1 at 1. Redding does not object to the Court's consideration of these records, and he, also, cites to these materials. Docs. 1-1; 32; 33.

In response, Redding did not provide his sworn testimony.[4] His one page brief simply argues that: "Ms. Foster rejected or denied me several times with respect to terms, conditions, and privileges of employment," and, "Time slots were available and Mr. Redding were (sic) denied those time slots by Ms. Foster to give preference to a Younger, White (Caucasian), Mr. Joshua Collins." Doc. 33 at 1. In his brief and his response to the Defendant's statement of undisputed facts, Redding cites to the administrative record filed by the Defendant. Docs. 32 at 1-2; 33 at 1. Redding also attaches to his brief an affidavit from Collins describing the July 2013 incident (Doc. 33-3), and a copy of a handwritten schedule which he described in his brief as "the first list that was posted on 28 Aug 2013" (Doc. 33 at 1). This schedule appears to be a copy of a handwritten fitness schedule found in the administrative record (Doc. 23-3 at 170, 172-73), and contains handwriting which, as far as the Court can tell, is Redding's. Finally, Redding attaches a copy of an October 22, 2014 letter from the Northern District of Georgia Clerk of Court stating that the court was returning Redding's complaint because he failed to pay the required filing fee. Doc. 33-3. Redding's brief does not explain how his attempt to file what may have been a timely action in the Northern District of Georgia impacts the timeliness of the filing of this action.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may

---

[4] When the Defendant moved for summary judgment, the Clerk provided Redding notice of his obligation to respond to the motion and the potential consequences of an insufficient response. Doc. 26.

support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.   PLAINTIFF'S BURDEN UNDER TITLE VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1).  The Title VII plaintiff has the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008).  A plaintiff may prove his case directly or circumstantially.  Here, there is no direct evidence of racial discrimination, so Redding must rely on circumstantial evidence.  When a claim is solely supported by circumstantial evidence, the district court analyzes the case on summary judgment under the burden-shifting framework set out in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).[5]  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  Under this analysis, the plaintiff has the initial burden to show that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do his job.  *Id.*

"An adverse employment action is not only an element of the prima facie case [under *McDonnell Douglas*], but an element of the claim itself."  *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012).  Whether the plaintiff was subjected to an adverse employment action is a question of fact subject to resolution using the traditional rules governing summary judgment.  *Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 268 (11th Cir. 2009).  Acts that might not rise to the level of adverse employment action individually, might rise to that level when considered collectively.  *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

"Generally, an adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001); *see also McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014).  Accordingly, where the negative action does not relate to the ultimate question of employment (decisions to terminate, not to hire, or demote the plaintiff), the action must,

---

[5]  The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can avoid summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker."  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  Here, however, Redding has not presented "a convincing mosaic of circumstantial evidence" that the Defendant acted with discriminatory intent.  More importantly, though, Redding has failed to demonstrate any adverse employment action, and "[a]n adverse employment action is not only an element of the prima facie case [under *McDonnell Douglas*], but an element of the claim itself."  *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012).  Accordingly, Redding's failure to demonstrate an adverse employment action is fatal to his claim, regardless of the framework applied.

in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee. *Crawford*, 529 F.3d at 970; *see also McCone*, 582 F. App'x at 800. The action must be "a serious and material change in the terms, conditions, or privileges of employment." *Holland*, 677 F.3d at 1056; *see also Hall v. Dekalb Cty. Gov't*, 503 F. App'x 781, 787 (11th Cir. 2013). "Although Title VII does not require proof of direct economic consequences, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment as 'viewed by a reasonable person in the circumstances,' regardless of the employee's subjective view." *Hall*, 503 F. App'x at 787 (quoting *Davis*, 245 F.3d at 1239).

## IV.   DISCUSSION

### A.   Timeliness of Redding's Complaint

Redding does not dispute the Defendant's contention that Redding was required to file this action no later than October 22, 2014. Redding did not file this action until November 21, 2014, a month later. Doc. 1. Although it appears that Redding thinks his unsuccessful effort to file a complaint in the Northern District of Georgia somehow excuses his late filing, he never explains why. For example, he does not say why he attempted to file an action in the Northern District or why he mailed a complaint to the Clerk for the Northern District of Georgia without a filing fee and, apparently, without an application to proceed *in forma pauperis*. Most importantly, he does not explain how an unsuccessful filing in the wrong court tolls the time for filing a Title VII complaint. Though Redding's "pleadings are afforded more leniency than a represented individual due to the fact that he is proceeding pro se," the Court informed Redding of his obligation to file an appropriate response to the Defendant's motion for summary judgment and the Court is not obligated to divine the factual and legal bases for his opposition to the motion. *Cf. Gould v. Furr*, No. 06-12420-BKC-JKO, 2015 WL 846416,

at *2 (S.D. Fla.) (stating that court is not "required to parse through [pro se litigant's]` pleadings in an attempt to divine [his] argument"). Accordingly, the Defendant is entitled to summary judgment because Redding has not rebutted Defendant's argument that this action is untimely.

Even if Redding's complaint had been timely filed, however, the Court would still grant summary judgment to the Defendant because Redding has failed to demonstrate an adverse employment action.

### B. Adverse Employment Action

The Defendant argues that Redding has not demonstrated any adverse employment action because: (1) "time preference for voluntary physical fitness leave does not involve a 'serious and material' term, condition, or privilege of employment;" (2) Redding "was provided and utilized the physical fitness leave time slot he requested;" and (3) any attempt by Foster to change Redding's fitness slot, by manipulation of paperwork or otherwise, has no tangible impact on Redding's fitness-leave benefit. Doc. 34 at 3-4.

The Defendant's precise argument is that Redding has failed to demonstrate adverse employment action as an element of Redding's prima facie case under *McDonnell Douglas*. Docs. 23-2 at 5; 34 at 2. However, the affirmative evidence adduced by the Defendant demonstrating that Redding suffered no adverse employment action is also sufficient to shift the burden to Redding to show an adverse employment action as an underlying element of his Title VII claim.

**1. Redding has not demonstrated that he was unable to utilize the physical fitness leave time slot he requested and thus has not established that he was subjected to an adverse employment action**

As noted, Redding offers no sworn testimony of his own to refute assertions in the Defendant's motion. Rather, Redding (1) cites the administrative record; (2) submits an affidavit by Collins describing the July 2013 incident; and (3) submits an

unauthenticated copy of a handwritten fitness schedule covering the period from July 28, 2013 through September 7, 2013. Doc. 33. The Court addresses each in turn.

### a.  Administrative record

The Defendant, citing the administrative record and Foster's affidavit, argues that even if Foster attempted to change Redding's exercise schedule, those changes were never implemented. Doc. 34 at 3-4. In other words, Redding was always able to exercise at the time he wanted to exercise. As best the Court can tell, Redding cites to the administrative record in an effort to demonstrate that the changes to his schedule were implemented. His efforts are unsuccessful.

Clearly, in the beginning, Redding only alleged that Foster tried to alter his exercise schedule. The first summary of Redding's two claimed incidents of discrimination (Doc. 23-3 at 44-46; *see also id.* at 117-19), describes Redding's claims as follows: "Incident 1" describes Foster, on July 30, 2013, "trying to force [Redding] to take an 0730 hour time slot for PT, while "Incident 2" describes Foster, on August 28, 2013, "trying to disguise the paperwork to manipulate" Redding out of his time-slot preference over Collins. *See* Doc. 23-3 at 44-46; *see also id.* at 118-19.[6] Redding reformulated the wording of his claims in an apparent effort to show harm from Foster's actions. For example, he notes that the "word 'tried' in incident one and two indicates that the discriminations [sic] had already occurred, but [Foster] attempted to fix the problems by adjusting the paperwork which was never satisfactory and definitely did not follow the MOA." Doc. 23-3 at 115; *see also id.* at 48. Similarly, Redding insisted that he was "forced" out of his timeslot into another. *See* Doc. 23-3 at 60-61 (alleging in May of 2014 that Foster "rejected me and forced me into a 0730 Time Slot," on another occasion had "disguised the paperwork to appear that Time Slots were filled that was

---

[6]  These two incidents are asserted consistently throughout Redding's pleadings, while a third (October, 2013) incident is asserted somewhat haphazardly. *See, e.g.*, Docs. 9 at 1-2; 25 ¶¶ 6, 7.

[sic] actually open," and on another occasion had (somehow) been involved in Collins approaching Redding about his chosen timeslot); *see also id.* at 71-72 (same).

Redding's statements seem calculated to *imply* that he was unable to utilize a time slot that he was entitled to under the Agreement.  Importantly, however, he has never directly made that claim, even when pressed by the EEOC for the nature of his alleged harm.  *See* Docs. 23-3 at 44-45 (letter from EEO Counselor asking specifically how Redding was harmed by the allegedly improper acts); 23-4 at 2 (EEOC decision affirming the dismissal of Redding's claims because: "Complainant was asked to provide evidence regarding his claims but failed to do so.  Complainant claimed that his supervisor tried to change his physical fitness time slots.  However, the record does not demonstrate that Complainant suffered any harm with respect to the terms and conditions of his employment.").  This Court, based on its review of the administrative record, reaches the conclusion that, at most, Foster attempted to force Redding out of his timeslot, but that, in the end, Redding kept the schedule he wanted.

Redding also points to a printed fitness schedule in the administrative record for the period from September 8, 2013 through October 19, 2013 (the "September/October Schedule").  Docs. 32 ¶ 11; 33 at 1.[7]  The September/October Schedule shows both Redding and Collins in the 10:00 A.M. – 11:00 A.M. time slot.  Docs. 23-3 at 160; 23-5 at 4.  The September/October Schedule appears to be designed so that, generally, only four people are scheduled in the same time slot.  *See id.*  Redding argues that this schedule demonstrates preference in time-slot assignment because Collins was added as a fifth employee into the same time slot as Redding.  Doc. 32 ¶ 11.  Redding argues that this "shows that Mr. Collins is treated differently."  *Id.*  This argument has no merit.  The fact that Collins was added as a fifth employee to the 10:00 A.M. – 11:00 A.M. time

---

[7]  The Defendant attached this schedule to Foster's declaration, in which she identifies and authenticates it as a true and accurate record of the posted fitness schedule during that period.  Doc. 23-5 at 2-4.

slot, which normally had only four openings, might show that Collins was treated better than all the other employees; however, it does not demonstrate that Redding did not receive his employment benefit—the time slot he was entitled to under the Agreement—nor does it evidence any discrimination against Redding distinct from the other employees also assigned that time slot. Accordingly, Foster's placement of Collins into the same time slot as Redding does not demonstrate any adverse employment action.

In sum, the administrative record offers no support for Redding's claim that he suffered an adverse employment action.

### b. Collins's affidavit

Second, Redding offers the affidavit of Collins. Collins's affidavit states:

> I, Joshua Collins a 27 year old White Male of sound mind and body, gives [sic] the following statement as truth. In or around July 2013 I was in Ms. Amanda J. Foster's office discussing my Fitness Time. Ms. Foster told me that Mr. Redding SCD (Service Computation Date) was senior to mine. Ms. Foster knew that I wanted to continue to work out/exercise with my friends. So she called Mr. Redding in and put him in the 7:30 am time slot. Mr. Redding questioned Ms. Foster about any later available time slots. Ms. Foster told Mr. Redding that there were no later available time slots. After, Mr. Redding had gone out of her office, [sic] Ms. Foster gave me the 9:00 am time slot. Obviously Ms. Foster gave me time slot preference over Mr. Redding.

Doc. 32-2.

This affidavit states that Foster informed Redding that he would be scheduled at 7:30 A.M., prior to Collins's 9:00 A.M. slot. But it does not state that this change was actually implemented. As noted by the Defendant, the affidavit does not address whether Redding prevailed in his later protests to Foster regarding the schedule.[8] Doc. 34 at 4. In her declaration, Foster swears (consistently with her statements in the

---

[8] In his response to interrogatories, Redding states: "On each occurrence[,] Ms. Foster was made aware of that [sic] I was uncomfortable and not agreeing to her decisions." Doc. 25 ¶ 8.

administrative record) that during the period that the discriminatory actions allegedly occurred, she assigned Redding his requested fitness slot and adhered to the Agreement.  Doc. 23-5 ¶¶ 8, 9, 13; *see also* Doc. 23-3 at 52, 158, 165.[9]  Accordingly, Collins's affidavit, at most, demonstrates that Foster made an attempt to change the schedule in preference to Collins over Redding, but—when placed in the light of Redding's assertions (both those in this action and the administrative action), Foster's declaration, and the other evidence in the record—is insufficient to raise a genuine issue of fact as to whether Redding was actually displaced from a time slot to which he was entitled.

### c. Fitness Schedule

Third, Redding offers a copy of a handwritten fitness schedule covering the period from July 28, 2013 through September 7, 2013 (Doc. 33-4), which he describes as "the first list that was posted on 28 Aug 2013" ("Exhibit C"), (Doc. 33 at 1).  According to this schedule, Redding was assigned an 11:45 A.M. – 12:45 P.M. time slot, which is the time slot he wanted, while Collins was assigned an earlier 9:00 A.M. – 10:00 A.M. time slot.  Doc. 33-4.

On its face, Exhibit C undercuts Redding's claim, and Redding fails to offer any clear explanation how it could support his claim.  The Court's best guess is that Redding offers Exhibit C to demonstrate his assertion that Foster tried to manipulate him by using phony time sheets or manipulated paperwork to cover up her misdeeds.  *See* Docs. 23-3 at 114-15; 25 ¶ 6.[10]  However, even if the contents of Exhibit C tended to support Redding's case, the contents are not presented in an admissible manner.

---

[9]  Foster's affidavit leaves much to be desired.  Myopically, it focuses on the period from September 8, 2013 through October 19, 2013, without addressing in any detail Redding's complaints regarding July 30, 2013 and August 28, 2013.  However, it does, without qualification, state that she adhered to the Agreement "at all times complained of in the Plaintiff's Complaint," which includes the July 30, 2013 and August 28, 2013 incidents.  Doc. 23-5 ¶ 13.

[10]  The schedule seems to be related to handwritten schedules offered by Redding in his EEOC mediation to show such manipulation.  Doc. 23-3 at 170, 172-73.

Exhibit C appears to be comprised, in whole or in part, of Redding's handwriting.  (The Court reaches this conclusion by comparing Exhibit C with Redding's self-acknowledged handwriting on schedules submitted in the administrative action.  Doc. 23-3 at 170, 172-73.)  There is no explanation of what portion of Exhibit C is comprised of Redding's notes.  Even if Exhibit C consists of something more than unsworn assertions by Redding, Redding offers no evidence as to the source or authenticity of such information.   Accordingly, Exhibit C is inadmissible and does not support Redding's claims in this action.  In any event, even if Exhibit C were admissible to demonstrate that Foster manipulated paperwork to trick Redding out of his rightful timeslot or to cover up such misconduct, Redding still fails to demonstrate an adverse employment action, as discussed below.

None of the material cited by Redding demonstrates that he was forced to utilize a fitness slot other than what he was entitled to.  At best, Redding has provided admissible evidence from which a jury could find that Foster sought to give favors to Collins and, in doing so, made several attempts to deprive Redding of his fitness time slot.  However, Redding has not demonstrated how these actions tangibly affected his fitness-leave benefit, let alone how any such effect was a serious and material change in a term, condition, or benefit of his employment.

> **2. Even if Foster successfully changed his schedule in the instances mentioned, such changes alone are not an adverse employment action because they do not tangibly impact Redding's fitness leave benefit**

Even if Redding were actually moved from his rightful time slot to an earlier slot on a few isolated occasions, such isolated actions would not establish a material or serious change in the terms, conditions, or benefits of his employment.  A reasonable person would not view being moved on a few occasions from one exercise slot to an earlier one—where not a part of a pattern larger than Redding alleges here—as having a tangible adverse effect on Redding's employment.   Rather, a reasonable person

under the same circumstances would recognize that these sorts of problems are commonplace and represent little more than the "ordinary tribulations" of the work place. *Cf. McCone*, 582 F. App'x at 800. Accordingly, Redding's claims must fail because he has not produced admissible evidence from which a jury could find that he was subject to an adverse employment action.[11]

## V.    CONCLUSION

Redding has not rebutted Defendant's argument that this action is untimely filed. Further, Redding has not demonstrated an adverse employment action. For these reasons, the Defendant's motion is **GRANTED**.

**SO ORDERED,** this 17th day of November, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

[11]  Because there is no surviving claim that the Air Force substantially disregarded Redding's rightful time preference, the Court need not address the Defendant's assertion that the Air Force's disregard of time preference for voluntary physical leave could *never* amount to a serious and material change in a term, condition, or privilege of Redding's employment. Doc. 34 at 3.